## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00919-GPG-SBP

DAVID LEEVAN and
YEKATERINA LEEVAN,

      Plaintiffs,

v.

AMERICAN STRATEGIC INSURANCE CORPORATION,

      Defendant.

---

## ORDER ON MOTION TO COMPEL AND OTHER DISCOVERY DISPUTES

---

**Susan Prose, United States Magistrate Judge**

      This matter is before this court on discovery disputes raised by Defendant American Strategic Insurance Corp. ("Defendant" or "ASIC"). *See* ECF No. 37 (minute entry of October 19, 2023), No. 38 (October 19, 2023 hearing transcript of informal discovery conference, hereafter the "Discovery Conference"), No. 39 (Plaintiffs' supplement to discovery statement), No. 48 (ASIC's responsive supplement). ASIC has also filed a motion to compel entry upon Plaintiffs' land for inspection and testing. ECF No. 49 ("Motion to Compel"), No. 50 (exhibits in support thereof). Plaintiffs, David Leevan and Yekaterina Leevan ("Plaintiffs" or "the Leevans"), have filed a motion for leave to supplement their response to ASIC's Motion to Compel. ECF No. 58 ("Motion to Supplement"). The undersigned considers the informal discovery dispute and

motions pursuant to 28 U.S.C. § 636(b), the Memoranda referring the motions (ECF Nos. 51, 59) and the Order Referring Case dated June 9, 2023. ECF No. 22.

For the reasons that follow, this court **GRANTS** the Motion to Compel; **ORDERS** Plaintiffs to allow inspection of the property and to answer ASIC's subject discovery requests, with the exception of ASIC's demand for information concerning Plaintiffs' fee arrangement with their counsel; **OVERRULES** the Leevans' objections to ASIC's subpoenas; and **GRANTS** the Motion to Supplement.

## BACKGROUND

This court is tasked with considering whether to compel the Leevans to allow Defendant ASIC to enter upon their land for inspection and testing, and with resolving several additional discovery disputes which the court heard in October 2023, pursuant to its then-practice standard for discovery disputes.

On or about December 30, 2021, Plaintiffs' home, located at 725 Pinehurst Court in Louisville, Colorado (the "Property"), was damaged in the Marshall Fire. Complaint, ECF No. 5 ¶¶ 3, 6. At the time of the Marshall Fire, the Property was covered by insurance policy number COA124434, issued to Plaintiffs by ASIC (the "Policy"). *Id.* ¶ 7. Plaintiffs filed a claim with ASIC (the "Claim"). Plaintiffs contend that ASIC performed an inspection on January 8, 2022, which "revealed visible smoke and ash damage to the exterior, interior walls, surface, and flooring, visible ash/soot inside all of the windows, doorframe, and some surfaces, smoke damage to the contents, and fire damage to the wooden fence, landscaping, rose bushes, and sprinkler system." *Id.* ¶¶ 11-12. ASIC agreed to issue payment to Plaintiffs of $44,982.83 to compensate them for this damage. *Id.* ¶ 13.

2

Plaintiffs hired a third party to perform a second inspection of the Property, and the third party recommended that Plaintiffs "remediate the environmental concerns found in the house." *Id.* ¶¶ 15-16. Plaintiffs requested an additional $565,197.40 from ASIC: (1) $129,258.51 for "pack out, cleaning, storage, and pack in of the contents of the [Property]" (*id.* ¶ 19); (2) $319,088.66 for "the mitigation of environmental concerns found in the dwelling" (*id.* ¶ 22); and (3) $116,850.18 for "a full frame replacement required of 15 windows" (*id.* ¶ 31). According to Plaintiffs, ASIC paid only an additional $12,406.09, based on its vendor's estimate for packing, moving, storing, and cleaning Plaintiffs' personal property. *Id.* ¶¶ 27–28. ASIC also paid for Plaintiffs' living expenses while they were displaced, up until December 31, 2022, when ASIC ceased payments. *Id.* ¶¶ 57, 70. On May 9, 2022, ASIC informed the Leevans that the estimates and demands they made through their adjuster, Public Insurance Adjusters of Colorado, for the additional "environmental" work was "not supported by the physical evidence of damage sustained to the property and have been contraindicated by the hygienist's testing and analysis." *Id.* ¶ 38. Plaintiffs contend that ASIC has not re-inspected the Property since February 10, 2022, and refused to do so despite multiple requests from Plaintiffs. *Id.* ¶ 50; *see also id.* ¶ 61 (stating that ASIC refused to re-inspect the Property on August 5, 2022); ¶ 65 (same on August 24, 2022); ¶ 71 (same on October 14, 2022).

Plaintiffs filed suit against ASIC on March 2, 2023, bringing three causes of action: (1) breach of contract; (2) unreasonable delay of payments under Colorado Revised Statutes §§ 10-3-1115 and 1116; and (3) breach of the duty of good faith and fair dealing "in reviewing, investigating, evaluating, adjusting and paying their claim." *Id.* ¶¶ 86-113. The Leevans assert that they are entitled to additional, unpaid policy benefits of $967,000 on the Claim; another

$1.934 million for bad faith; economic and non-economic damages arising from ASIC's breach of contract (including without limitation the Leevans' additional living expenses while continuing not to live in the Property); prejudgment interest as provided by Colorado law; and their reasonable costs and attorney fees pursuant to Colorado Revised Statute § 10-3-1116. *See* Scheduling Order (ECF No. 25) at 8 (Plaintiffs' estimates of damages, by categories).

Since this court entered the Scheduling Order in June 2023, the parties have exchanged written discovery requests and taken at least some depositions, including of the former ASIC adjuster who was assigned to the Leevans' Claim, Jacob Bashor. *See, e.g.*, ECF No. 39-1 (Plaintiffs' excerpts of Bashor Depo.); No. 48-1 (ASIC's excerpts of same).[1] ASIC has issued subpoenas (the "Subpoenas") to the Leevans' environmental consultant, adjuster, and contractors who inspected the Property or otherwise provided estimates to the Leevans before this lawsuit. The Subpoenas seek at least documents of the Contractors.[2] None of the Contractors moved to quash the Subpoenas. However, the Leevans objected to all of them except the subpoena to their adjuster. The court heard the Leevans' objections to the Subpoenas by way of the parties' October 5, 2023 Discovery Statements (emailed to chambers, per this court's practice standards) and the Discovery Conference.

ASIC also raised objections to the Leevans' responses to ASIC's Interrogatories 1, 7, 12, and 13, and ASIC's Request for Production ("RFP") No. 15. ASIC asserts these interrogatories and the RFP seek information that is relevant to verifying the Leevans' asserted damages, to

---

[1] Originally, the scheduling of Mr. Bashor's deposition was one of the issues raised in the October 2023 Discovery Conference; that issue has since been resolved.

[2] Neither side attached a complete subpoena to their Discovery Statements. Plaintiffs attached only the list of documents sought.

ASIC's defenses stated in its Answer (ECF No. 12), and to ASIC's theory for some of those defenses, which it refers to as "claim inflation." ASIC asserts that when insureds retain their own adjusters, consultants, and contractors to advise them concerning what repairs or remediation are necessary and how much the work will cost—like the Leevans did for their Claim—the fees of the third parties create a motivation to inflate the claim. ASIC also asserts that these discovery requests seek information relevant to the Leevans' credibility.

The Leevans assert that these discovery requests are improper because ASIC denied their Claim in the adjustment process and cannot use their breach of contract claim to reopen subjects that ASIC closed. The Leevans further assert that these requests seek irrelevant information to the extent they request their fee arrangement with counsel (or others) because counsel's motivation in pursuing this lawsuit is irrelevant, and that as to transactions unrelated to their claim, they have a right to financial privacy.

After the Discovery Conference, ASIC requested to perform an inspection of the Property, but Plaintiffs have refused to allow such an inspection. Motion to Compel at 1. ASIC now moves to compel the inspection under Federal Rule of Civil Procedure 34, which allows for "entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2). ASIC asserts that the inspection is required to rebut Plaintiffs' claims that the Property was "damaged by 'contaminants' from the fire which have made the home unsafe for living." Motion to Compel at 2. In support of this request, ASIC points to Mr. Leevan's deposition testimony, in which he states that: (1) the Property no longer "smelled" (ECF No. 50, 11/15/2023 Depo. Tr. at 78:21–

22); (2) only "a few windows" were not operating correctly (*id.* at 238:7–35); and (3) he was not aware of anyone inspecting the roof and informing him that replacement was required (*id.* at 249:17–251:5).

The Leevans have responded to ASIC's Motion to Compel. ECF No. 52 ("Response"). They make many of the same arguments that they raised in the Discovery Conference, including that ASIC has waived the right to inspect the Property by declining to do so during the claim-adjustment process, and that by denying the Claim, the doctrines of estoppel and laches prohibit ASIC from conducting an inspection now. ASIC has replied. ECF No. 53 ("Reply"). In particular, ASIC argues that none of the Leevans' cited cases support their waiver, estoppel, or laches arguments.

The Leevans then moved for leave to supplement their response. ECF No. 58. In the Motion to Supplement, they seek to include testimony from ASIC's claim adjuster, Ms. Jeanne Anthony, stating that she had "conducted a complete and total inspection of everything that was needed to assess the insurance claim," and that she had "the ability to hire any and all experts that were needed to assess the insurance claim." *Id*. at 2. ASIC opposes the Motion to Supplement, ECF No. 60, and the Leevans filed a reply. ECF No. 62. Applying the liberal "freely given" standard for granting leave to amend that likewise governs requests for supplementation, the court **GRANTS** the Motion to Supplement. *See, e.g.*, *Charnoff v. Loving*, No. 19-cv-02381-LTB-MEH, 2020 WL 5803299, at *1 (D. Colo. Aug. 27, 2020) (applying leave to amend standard under Fed. R. Civ. P. 15(a) to request for supplementation, and recognizing that amendment may be denied "only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments

previously allowed, or futility of amendment") (quoting *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010)). The court has taken into account this supplementary information in reaching its conclusions below.

## LEGAL STANDARDS

### I.     Relevance and Proportionality: Rule 26(b)

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a).

Relevance under Rule 26(b)(1) is "broadly construed" in relation to discovery, and a request is considered relevant "if there is 'any possibility' that the information sought may be relevant to any party's claim or defense." *Byron-Amen v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-02364-NYW, 2022 WL 1567563, at *2 (D. Colo. May 18, 2022), *reconsideration denied*, 2023 WL 2632783 (D. Colo. Mar. 24, 2023) (citing *Martensen v. Koch*, 301 F.R.D. 562, 570 (D. Colo. 2014)); *Brackett v. Walmart Inc.*, No. 20-cv-01304-KLM, 2021 WL 1749975, at *3 (D. Colo. May 4, 2021) ("[R]elevance is not so narrowly construed as to limit a story to its final chapter, and neither party is entitled to make it impossible for all meaningful parts of the story to be told."). "[T]he party resisting discovery has the burden to establish the lack of relevance by

demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under [Rule 26], or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004) (quotation omitted).

In considering proportionality, this court "weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Carlson v. Colo. Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 274 (D. Colo. 2022) (citing Fed. R. Civ. P. 26(b)(1)). The Advisory Committee Notes to the 2015 Amendments make clear that the party seeking discovery does not bear the burden of addressing all proportionality considerations. Advisory Comm. Notes to Fed. R. Civ. P. 26(b)(1).

Rule 26(b)(2)(C) allows a court to limit discovery on motion or on its own if it determines: (1) the discovery sought is unreasonably cumulative or duplicative, or may be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C). Also, "[t]he court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden" from an otherwise relevant discovery request. Fed. R. Civ. P. 26(c)(1). The party seeking such protection "has the burden of proof[.]" *Stroup v. United Airlines, Inc.*, No. 15-cv-01389-WYD-CBS, 2016 WL 7176717, at *3 (D. Colo. Sept. 16, 2016).

II.     **Requests for Entering Onto Land: Rule 34(a)(2)**

Requests for entry on land are governed by Rule 34 of the Federal Rules of Civil

Procedure, which states:

> [a] party may serve on any other party a request within the scope of Rule 26(b) . . .
> to permit entry onto designated land or other property possessed or controlled by
> the responding party, so that the requesting party may inspect, measure, survey,
> photograph, test, or sample the property or any designated object or operation on
> it.

Fed. R. Civ. P. 34(a)(2). Additionally, the request "(A) must describe with reasonable

particularity each item or category of items to be inspected; (B) must specify a reasonable time,

place, and manner for the inspection and for performing the related acts; and (C) may specify the

form or forms in which electronically stored information is to be produced." Fed. R. Civ. P.

34(b)(1).

"The right of a party under Rule 34 to inspect and test, like all discovery, is not

unlimited." *Micro Chemical, Inc., v. Lextron, Inc.*, 193 F.R.D. 667, 668-69 (D. Colo. 2000). In

resolving a motion under Rule 34(a)(2), as with any discovery dispute, the court analyzes the

question through the lens of the relevance and proportionality standards set forth in Rule

26(b)(1). *See, e.g.*, *Fernandez v. Fisher*, No. CV 19-06036 SB (JEMx), 2020 WL 7050570, at *1

(C.D. Cal. Oct. 8, 2020) (recognizing that "Rule 34(a)(2) provides that a party may serve a

request within the scope of Rule 26(b)(1)"), *review denied*, 2020 WL 7775617 (C.D. Cal. Nov.

20, 2020). In particular, the court should consider "the degree to which the proposed inspection

will aid in the search for truth," and then balance that "against the burdens and dangers created

by the inspection." *Silverstein v. Fed. Bureau of Prisons*, 07-cv-02471-PAB-KMT, 2009 WL

1451684, at *2 (D. Colo. May 20, 2009) (quoting *Belcher v. Bassett Furniture Indus., Inc.*, 588

F.2d 904, 908 (4th Cir. 1978)).

### III.    Standards for Subpoenas: Rule 45

Federal Rule of Civil Procedure 45 directs that this court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). A party to a case has standing to object to a subpoena only on grounds of privilege or privacy. *See, e.g.*, *Cobbler Nevada, LLC v. Does*, No. 15-cv-02771-WYD-MEH, 2016 WL 300827, at *1 (D. Colo. Jan. 25, 2016) ("Objections unrelated to a claim of privilege or privacy interests are not proper bases upon which a party may quash a subpoena.") (citations omitted); *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997) ("a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought" or "upon a showing that there is a privacy interest applicable").

"The movant bears the burden of persuasion in a motion to quash a subpoena." *See, e.g.*, *Bales v. Quest USA Corp.*, No. 18-mc-00222-RM, 2019 WL 1454696, at *1 (D. Colo. Apr. 2, 2019) (citation omitted); *S.E.C. v. Goldstone*, 301 F.R.D. 593, 646 (D.N.M. 2014) (noting the party moving to quash a subpoena has the burden to demonstrate good cause and/or a privilege to be protected). "A party seeking to quash a subpoena duces tecum has a particularly heavy burden as contrasted to a party seeking only limited protection." *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 669 F.2d 620, 623 (10th Cir. 1982). The objecting party must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (internal quotation marks and citations omitted).

The court also takes into account that "a subpoena is bound by the same [Federal Rule of Civil Procedure 26(b)] standards that govern discovery between the parties, and, to be enforceable, a subpoena must seek information that is relevant to a party's claims or defenses and proportional to the needs of the case." *Oransky v. Martin Marietta Materials, Inc.*, No. 18-cv-00266-MSK-NRN, 2018 WL 11514384, at *1 (D. Colo. Sept. 7, 2018); *see also, e.g.*, *GSL Grp. Inc. v. Travelers Indem. Co.*, No. 18-cv-00746-MSK-SKC, 2020 WL 12813087, at *2 (D. Colo. May 27, 2020) ("[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b).") (citing 9A Wright & Miller, *Federal Practice and Procedure* § 2452 (3d ed. 2008)).

## ANALYSIS

### I. ASIC's Motion to Compel Inspection of the Property

Defendant ASIC seeks to compel the Leevans to allow entry onto their land for further inspection of the Property. This court understands the request for inspection to have been set forth exclusively in an email from counsel for ASIC to counsel for the Leevans, which states in relevant part:

> We want to inspect the entire property, including the interior (where other testing has been performed), the exterior walls, windows, and the roof of the property. In addition to experts, the inspection would also likely be attended by the lawyers. We would not expect anyone from claims to be present. We do not anticipate doing any destructive testing, but may inspect portions of the home that had been previously tested. We are working to identify the names of the individuals that will participate, which may depend on the date of the inspection and availability.

November 13, 2023 email from Mr. Brophy to Mr. Levy, ECF No. 53-2 at 1.

In opposing the inspection, the Leevans argue (1) that ASIC's proposed inspection is not relevant to the case; (2) that the proposed inspection fails to suggest any limitations in time,

11

scope, or persons and is too vague; and (3) that ASIC is not entitled to reinspect their home, has waived its right to do so after already inspecting the home three times in 2022, and that yet another inspection would impose an undue burden on them. The court finds none of these arguments persuasive and grants the Motion to Compel.

### A.      Relevance of the Inspection and Sufficiency of the Notice

The Leevans first argue that ASIC's proposed inspection "has nothing to do with any claim or defense of this case" because the complaint alleges conduct from before the suit was filed. Response at 4. Among other things, the Leevans argue that *Schultz v. GEICO Cas. Co.*, 429 P.3d 844 (Colo. 2018), applies here and limits the scope of discovery available to ASIC. Response at 8. ASIC replies that because the extent of damage to Plaintiffs' property is at issue in this lawsuit and the Leevans' claims are premised on the allegation that ASIC has not paid for the full scope of these alleged damages, "ASIC is entitled to conduct an inspection of the subject property, as such discovery is undeniably relevant to the claims and defenses in this action and proportional to the needs of the case." Reply at 1-2. Furthermore, "[p]re-suit inspections, or opportunities to conduct such pre-suit inspections, are irrelevant to ASIC's request for an inspection in connection with this lawsuit." *Id*. at 3. And, "[t]here is no authority under Colorado law which suggests that an insurance company is prohibited from obtaining discovery that it did not seek during the claim process." *Id*. at 4.

The court finds that the Leevans have failed to meet their burden of proving that this facially-relevant discovery is not relevant or proportional to the needs of the case. *Simpson*, 220 F.R.D. at 359. While the complaint alleges conduct that occurred before the suit was filed, that does not preclude parties from seeking discovery, including an inspection of property under Rule

34(a)(2), where the insured raises a claim for breach of contract. *See, e.g.*, *Rowell v. Nw. Mut. Life Ins. Co.*, 21-cv-00098-PAB-NYW, 2021 WL 5072064, at *5 (D. Colo. Aug. 23, 2021) ("Thus, as [this] and other courts have found before, an insurer's failure to seek information during the adjustment of the claim does not necessarily form a bar to further discovery once litigation commences for breach of contract.") (collecting cases). Indeed, this court has concluded on three prior occasions that *Schultz* does not apply when a possible breach of contract is at issue in the case. *See Ioerger v. State Farm Mut. Auto. Ins. Co.*, ---F.R.D.---, No. 22-cv-01807-REB-SBP, 2023 WL 11756921, at *4 (D. Colo. June 30, 2023) (following *Anchondo-Galaviz v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-01322-JLK-NYW, 2019 WL 11868519, at *10 (D. Colo. July 19, 2019), in finding that a Rule 35 medical examination was warranted, despite the insurer having conducted a medical examination of the plaintiff during the claim-adjustment process, because the insured's current medical condition was still at issue in connection with a breach of contract claim)).

"Courts in this District routinely follow *Schultz—except* in cases where an insured raises a breach of contract claim." *Rosen v. Nationwide Prop. & Cas. Ins. Co.*, No. 22-cv-01378-DDD-SBP, 2023 WL 11113895, at *7 (D. Colo. Oct. 18, 2023) (emphasis added; collecting cases), *reconsideration granted*, 2024 WL 2245174 (D. Colo. May 17, 2024). In *Rosen*, there initially was no breach of contract at issue in this case, and so this court denied the insurer's requested discovery of the insured. But when the insurer later amended to bring affirmative defenses alleging that the insured breached the policy conditions and failed to comply with conditions precedent, this court granted the insurer's requested discovery on reconsideration. *Id.*, 2024 WL 2245174, at *2-4. Most recently, in a case in which the Leevans' counsel, Mr. Levy, was counsel

for the insured, this court again held the same:

> Plaintiff's case is not limited to bad faith claims; she also brings a breach of contract claim. ECF No. 131 (Am. Complt.) at 15 (Second Claim for Relief). It is undisputed that Defendant has not paid Plaintiff the full $250,000 policy limit for UIM benefits. Accordingly, the scope of discovery in this case is clearly not governed by *Schultz*. "Courts in this District routinely follow *Schultz*—**except in cases where an insured raises a breach of contract claim**."

*Stanisavljevic v. Standard Fire Ins. Co.*, No. 22-cv-03287, 2024 WL 2830949, at *9 (D. Colo. June 4, 2024), *partially stayed*, 2024 WL 3201638 (D. Colo. June 27, 2024) (quoting *Rosen*, 2023 WL 11113895, at *7) (emphasis in original, collecting cases).[3]

Here, the court respectfully disagrees with the Leevans' unsupported contention that the proposed inspection "has nothing to do with any claim or defense of this case." Response at 4. The Complaint makes plain that the Leevans' claims hinge, in significant part, on ASIC denying additional coverage on the Claim because the extra work the Leevans proposed was "*not supported by the physical evidence of damage* sustained to the property." Complaint ¶ 38 (emphasis added). ASIC also points to its third affirmative defense of failure to fully perform and comply with the Policy, including the failure to "establish direct physical loss for which Plaintiffs are claiming damages." ECF No. 38 (Hrg. Trans.) at 52; ECF No. 12 (Answer) at 15. "Their position is we paid – in essence, we paid an insufficient amount. . . . And we say we didn't pay an insufficient amount. You asked for an inflated, unjustified amount, including things that just have no basis at all." ECF No. 38 at 52-53. An inspection of the Property unquestionably would yield information relevant to claims that turn on "the physical evidence of

---

[3] Objections are currently pending to the *Stanisavljevic* and *Rosen* orders, but as noted, this court followed extensive case law within this District. The pending objections do not prompt this court to retract its reasoning.

damage" on the Property—including, critically, the Leevans' breach of contract claim. *Id.* ¶¶ 86-101. On this record, the broad relevance standard—allowing the discovery of information where there is "*any possibility*" it may be relevant to any party's claim or defense, *Byron-Amen*, 2022 WL 1567563, at *2 (emphasis added)—is readily satisfied.

The court next briefly addresses the Leevans' argument that ASIC has failed to provide a sufficiently particular notice of the proposed inspection of the Property as required by Rule 34. *See* Response at 4. They contend that they lack information concerning such factual specifics as "who will be conducting any such inspection" and the scope of access to the Property that ASIC demands. *Id.* The Leevans construe the Motion to Compel as ASIC "requesting literally *carte blanche access with no limitations*." *Id.* (emphasis added). They vastly overstate the point.

ASIC explicitly has informed the Leevans, through counsel, that it wishes "to inspect the *entire* property, including the interior (where other testing has been performed), the exterior walls, windows, and the roof of the property." ECF No. 53-2 at 1 (emphasis added). The inspection would be attended by ASIC's experts and their attorneys. *Id.* No "destructive testing" would be required. *Id.* While it could be wished that ASIC had provided this notice by more formal means—a written request for production, say—there is nothing in the communication from ASIC's counsel that suggests an intent to obfuscate the purpose or scope of the anticipated inspection. The email clearly articulates the parameters—the "entire" Property is to be inspected—and it is only to be expected that an insurer accused of breaching a contract under the circumstances here would seek access to the whole Property, with no arbitrary limits on what the inspector may examine. The Leevans, after all, claim that their Property is literally permeated with damage: there is char and/or soot on all "hard surfaces" located within the Property, "in

wall cavities, and behind the structure's siding." Complaint ¶ 5. The Leevans have expended substantial resources to explore and define the scope of this purportedly extensive damage, retaining a public adjuster and estimators who have calculated the costs of restoration. *Id.* ¶¶ 17, 19, 22, 31. Their ultimate position is that nothing short of an "extensive demo" of the home is required. *Id.* ¶ 58. As relief in this lawsuit, the Leevans demand hundreds of thousands of dollars from ASIC. *Id.* ¶¶ 19, 22, 31. Under these circumstances, the court discerns no basis to place constraints on ASIC's ability to examine the entire premises or to conduct that inspection in the presence of counsel and retained expert witnesses of its choosing.

In concluding its analysis of the notice issue, the court respectfully observes that the record here confirms there was never any reason for the Leevans to be confused about the conditions of the request for inspection. Counsel for ASIC invited the Leevans' counsel to work with them to identify dates for the inspection, which in turn would have allowed counsel to confirm the identity of the participants. ECF No. 53-2 at 2; *see also* Reply at 9 (stating that "ASIC's counsel further advised that the inspection would be attended by ASIC's counsel and one or two experts, including a wildfire expert/engineer, and asked for dates that the property could be made available to inspect"). Counsel for the Leevans did not respond to ASIC's request for available dates and, during a subsequent phone call initiated by ASIC's counsel, "Plaintiffs' counsel advised that there was nothing further to confer about because Plaintiffs object to ASIC conducting *any* inspection of the Property." Reply at 9 (emphasis added). Having placed roadblocks in the way of any substantive follow-up communications concerning inspection of the Property, the Leevans cannot be heard now to complain that they lacked sufficient notice.

**B.      No Waiver or Undue Burden**

The Leevans point to no persuasive authority supporting their argument that this court should prohibit the relevant and properly-noticed inspection of their Property.

The Leevans first observe that Rule 34 allows for the possibility that a party will be permitted to inspect—not *reinspect*—the Property. Response at 5 (citing Fed. R. Civ. P. 34(a)(2)). They note that ASIC has already conducted three inspections: "one by its claims employee for the entire home [on January 8, 2022], one by its claim employee for the roof [on January 24, 2022], and then one from its chosen industrial hygienist engineer" [on February 10, 2022]. *Id.* at 6. The Leevans maintain that not "a single deficiency" was identified "in any of those inspections, nor any reason why such inspections—the scope of which were entirely selected by defendant in the claim process—were not sufficient to enable defendant to properly adjust the claim." *Id*. And while the Leevans acknowledge that the Policy gave ASIC the right to inspect the Property as often as it reasonably required, they emphasize that ASIC represented it would not conduct any reinspection—even after the Leevans requested reinspections on July 14 and July 28, 2022. *Id*. at 7.

The Leevans further assert that ASIC "now claims that the very same basis it gave for refusing Plaintiffs' multiple requests to reinspect is actually the reason it needs to reinspect. Defendant has waived any right to a reinspection and/or is estopped from reinspecting." *Id*. "This contradiction alone," the Leevans contend, "goes to demonstrate that there is no legitimate need for a reinspection." *Id*. at 10. Further, the Leevans argue that the doctrine of laches precludes ASIC's request. *Id.* at 8 (citing *Copper Oaks Master Home Owners Assn. v. Am. Fam. Mut. Ins. Co.*, No. 15-cv-01828-MSK-MJW, 2018 WL 3536324, at *17-18 (D. Colo. July 23, 2018) ("The

17

elements of laches are 1) full knowledge of the facts; 2) unreasonable delay in the assertion of
available remedy; and 3) intervening reliance by and prejudice to another.") (quotation omitted)).
They argue that another inspection would be burdensome, as it would require them "to open their
home yet again to as-of-yet unnamed strangers for an inspection with an undefined scope. This is
particularly true given that they have already been made to do so on multiple occasions." *Id.* at
11.

ASIC responds that the pre-suit inspections, as well as speculation as to its motive in
seeking an inspection during this litigation, are irrelevant. Reply at 3-4. Additionally, ASIC
argues, "there is no evidence indicating that [it] intentionally relinquished its future right to
discovery in a lawsuit that had yet to be filed." *Id.* at 4. ASIC contends that there is no legal
authority supporting the Leevans' waiver/laches argument. *Id.* at 4-8 (discussing cases).

***Waiver.*** The court first addresses the question of waiver and finds the Leevans' position
contrary to well-established precedent in this District.

As this court has noted elsewhere, judges on this court routinely have found that insurers
are entitled to discovery that is relevant to their defenses on breach of contract claims—
regardless of whether the insurer sought that information during claim adjustment. *See, e.g.*,
*Rowell*, 2021 WL 5072064, at \*5 (holding that "an insurer's failure to seek certain information
during the adjustment of a claim does not necessarily form a bar to further discovery once
litigation commences for breach of contract," and concluding the insurer could conduct
discovery relevant to the policy exclusion it asserted in denying the claim, despite not having
sought that information during claim adjustment); *Preitauer v. Am. Family Mut. Ins. Co.*, No. 20-
cv-00845-RM-SKC, 2021 WL 83295, at \*1-2 (D. Colo. Jan. 11, 2021) (noting that where insurer

had not yet denied the insured's claim or rendered a coverage decision, insurer was entitled to vocational testing and functional capacity evaluation of the insured); *Meumann v. Peerless Indem. Ins. Co.*, No. 19-cv-03554-CMA-KMT, 2020 WL 4016111, at *2-3 (D. Colo. July 15, 2020) (finding that insurer's payments pursuant to *State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501 (Colo. 2018), did not amount to a denial of the insured's claim, and that insurer was entitled to independent medical examination of the plaintiff despite not having requested one before sending a payment); *Curtis Park Grp., LLC v. Allied World Specialty Ins. Co.*, No. 20-cv-00552-CMA-NRN, 2020 WL 5406130, at *5 (D. Colo. Sept. 9, 2020) ("This case, by contrast, is not just about bad faith, but also about whether there is any coverage at all based on the cause of the deflection . . . . Here, evidence as to the cause of the deflection (even evidence acquired after Allied World made its decision) is still relevant to the underlying question as to whether there is coverage for this loss under the policy."); *Anchondo-Galaviz*, 2019 WL 11868519, at *9-10 (finding that insurer was entitled to medical examination of insured despite not seeking such an exam during claim adjustment, where insured sought damages for future treatment and impairment).

At the Discovery Conference, the Leevans maintained that their waiver argument is a "new" one, not previously raised in any prior case. Respectfully, that is not so. In their Discovery Statement, the Leevans cite *Walker v. Am. Standard Ins. Co. of Wis.*, No. 11-cv-00927-LTB, 2011 WL 3876901 (D. Colo. Sept. 2, 2011)—a case in which their own counsel made precisely the same waiver argument that he raises on behalf of the Leevans. The Honorable Louis T. Babcock rejected that waiver argument, finding that Mr. Levy's interpretation of the cases on

which he relied (and which he cites again in the Discovery Statement here),[4] "distort[ed] the rule":

> Plaintiff next argues that Defendant's motion [to add an affirmative defense] should be denied because Defendant waived this defense by not raising it prior to litigation. Plaintiff cites *Colard* for the proposition that a defendant-insurer waives every defense it does not assert or reserve prior to litigation. This statement is too broad and thus distorts the rule. *Colard* more narrowly held that the defendant-insurer "waived its right to assert failure to timely forward suit papers as a defense *because it denied liability on the basis of coverage only*" prior to litigation. 709 P.2d at 15 (emphasis added). Furthermore, *Colard* cited *Wells* for its holding, and *Wells'* rule is similarly narrower than Plaintiff's argument. *Wells* held that "*[i]n basing its denial of liability and its refusal to pay upon [the ground that the policy does not cover the claim] only* "prior to filing its answer, "the [defendant-insurer] waived the right to insist upon all other grounds of objection . . . ." 56 P.2d at 938 (emphasis added).
>
> Thus, the rule emanating from *Wells* and *Colard* is that if a defendant-insurer denies liability prior to litigation on some specified defense, it waives all those defenses not asserted. That did not occur here.

*Id.* at *4-5. The court also found that allowing the insurer to add a previously unasserted affirmative defense would not offend *Brekke*, as doing so does not impose a "hurdle" and would not force the insured to "'re-litigate an issue previously determined." *Id*. at *5.[5] Thus, *Walker* rejected Mr. Levy's argument in total.

---

[4] *Federal Life Ins. Co. v. Wells*, 56 P.2d 936 (Colo. 1936); *Colard v. Am. Family Mut. Ins. Co.*, 709 P.2d 11 (Colo. App. 1985); and *State Farm v. Brekke*, 105 P.3d 177 (Colo. 1994).

[5] The other cases the Leevans cite (*see* Discov. Stmt. at 6) fail to support their argument that ASIC, under the circumstances here, has waived its right to conduct another inspection of their home. *Flatiron Paving Co. of Boulder v. Great Sw. Fire Ins. Co.,* 812 P.2d 668, 671 (Colo. App. 1990) (insurer "waived its right to assert failure to timely forward suit papers as a defense because it denied liability on the basis of coverage only"), *superseded in part on other issue by statute, as stated in Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 148 n.10 (Colo. 2007); *Bloom v. Wolfe*, 547 P.2d 934, 937 (Colo. App. 1976) (insurer waived defense of failure to timely submit proof of loss because the deadline had already passed before the insurer entered a

This court finds no reason to countenance the identical waiver argument here. As in *Walker*, the record in this case does not indicate that ASIC denied the Leevans' claim on a particular basis under the Policy. The letter the Leevans attach to their Discovery Statement does not mention any specific Policy provision, nor does it reference any express denial of coverage.[6] Instead, the Leevans were informed that the additional repairs and remediation they had requested were found to be unnecessary, "based upon the information [ASIC has] to date." Plaintiffs' Ex. 2 (ASIC letter of Oct. 3, 2022). The Leevans were invited to submit additional information that might affect ASIC's "coverage investigation and subsequent coverage decision in this matter[.]" *Id.* And the letter expressly stated that it was not to be construed "as a waiver of any rights or defenses available to us by contract or at law as all such rights and defenses are hereby specifically reserved." *Id.*

---

non-waiver agreement); *Metro. Paving Co. v. City of Aurora*, 449 F.2d 177 (10th Cir. 1971) (denying claim "on the merits" waived contractual right to prompt notice of changed conditions); *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 970 (Colo. App. 1996) ("Plaintiff has cited no authority, and we have found none, to support her assertion that an insurance company has waived the right to present testimony from an expert witness unless that witness is specifically mentioned in a denial letter."), *aff'd and remanded*, 955 P.2d 1008 (Colo. 1998); *U.S. Fid. & Guar. Co. v. Budget Rent-A-Car Sys., Inc.,* 842 P.2d 208, 210 n.3 (Colo. 1992) ("An insurer should raise (or at least reserve) all defenses within a reasonable time after learning of such defenses, or those defenses may be deemed waived or the insurer may be estopped from raising them," citing inter alia, *Colard*); *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1183 (D. Colo. 2018) (noting the insurer's "denial letter cite[d] inadequate documentation as the sole basis for defendant's decision to deny plaintiff's insurance claim"). These cases either concern defenses that are logically inconsistent with the insurer having accepted a claim at all (i.e., later asserting a failure to timely notify) or denials of claims expressly premised on only one basis, such as lack of coverage.

[6] The court evaluates the letter for purposes of the instant discovery dispute only and expressly makes no findings or conclusions regarding any dispositive issue that may hinge on the language of the letter.

In short, because the Leevans bring a breach of contract claim for additional benefits under the Policy—and ASIC does not seek to inspect their home to establish a clearly-waived defense like failure to cooperate (which specifically requires giving the insured notice and an opportunity to cure under Colorado Revised Statute § 10-3-1118(1)(e))—this case does not come within the strictures of *Wells*, *Colard*, or *Brekke*.[7] The Leevans have not shown that ASIC has waived its right to inspect their home.

**Undue burden.** Turning next to the Leevans' contention that a reinspection of the Property would impose an undue burden on them, the court finds that the Leevans have failed to demonstrate good cause to preclude ASIC from conducting the inspection on this basis. *See* Fed. R. Civ. P. 26(c)(1).

"Good cause," including "undue burden," must be established "in a particularized manner rather than simply by asserting generalities"; evidence of an "actual, identifiable burden" must be produced. *Meeker v. Life Care Ctrs. of Am., Inc.*, No. 14-cv-02101-WYD-NYW, 2015 WL 7882695, at *3, 5 (D. Colo. Dec. 4, 2015), *order aff'd*, 2016 WL 11693704 (D. Colo. Feb. 1, 2016) (finding that speculative statements, unaccompanied by "concrete facts," were insufficient to carry the party's "burden or to persuade this court that there is an actual, identifiable burden that can be weighed against the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues"). The Leevans have made no "particularized

---

[7] Indeed, if the Leevans were correct that an insurer waives all potential defenses unless it expressly invokes them during the claim-adjustment process, then the 2020 amendment to Colorado Revised Statute § 10-3-1118—expressly providing for waiver of the defense of failure to cooperate—was seemingly superfluous.

showing" that the inspection would create any undue burden. *Jackson v. BNSF Ry. Co.*, No. 06-cv-00802-WDM-MJW, 2007 WL 1630691, at *1 (D. Colo. June 4, 2007) (finding that a request for entry on land to test the relevant issues before the court did not impose an undue burden). They state that they would be burdened because the Property is their home, Response at 11, but the evidence before the court indicates the Leevans do not currently occupy the house and therefore would suffer no intrusion by the inspection process. 11/15/2023 David Leevan Depo., ECF No. 53-1 at 3-4 (testifying that the Leevans live in a rental home in Boulder). Too, the Leevans' belief that they cannot occupy the home—presumably because of soot and char in the wall cavities and other effects of the fire—underscores the relevance of ASIC's request for an up-to-date inspection of the Property.

Further negating a finding of undue burden associated with an inspection of several hours' duration is the fact that the Leevans themselves twice requested (in July 2022) that the Property be reinspected. The court finds no good cause for their opposite stance now, when the only apparent difference is that it is *ASIC* making the request.

*     *     *

To sum up, the Leevans have failed to demonstrate (1) that the inspection is not relevant; (2) that they have received insufficient notice concerning the scope and terms of the inspection; (3) that ASIC has waived its right to inspect the Property; and (4) that such an inspection would unduly burden them. The court therefore **GRANTS** the Motion to Compel the inspection of the Property.

II.       **October 2023 Informal Discovery Dispute**

  A.  *The Leevans' Objections to the Subpoenas*

  The Subpoenas at issue are directed to: CARE Restoration, LLC; Professional Restoration; Pinnacle Windows and Restoration, LLC; The Contents Company, LLC; Chambers General Contractors, LLC; and RestoreCo, Inc. *See* Plaintiffs' Discovery Statement at 3.[8] Plaintiffs submitted a "sample" of the Subpoenas as Exhibit 5 to their Discovery Statement. The court refers to the subpoena recipients collectively as the "Contractors." From the Discovery Conference, the court understands that the Contractors have already produced their responsive documents to ASIC. The Leevans therefore ask the court to preclude ASIC from using those documents, based on the Leevans' objections. Although the Leevans thus appear to request that the court order ASIC to return the subpoenaed documents, the parties have treated this as a request to quash the Subpoenas. The court will do likewise.

  In an email between counsel, the Leevans objected to the Subpoenas, arguing relevance and proportionality. Specifically, counsel objected:

> And . . . we want to ask Magistrate Judge Prose for a discovery hearing on the subpoenas you just served, primarily because they violate the rule that the litigation must be premised on the information known by the parties at the time, and the fact that none of these documents were relevant to the reasons your client told us they were denying the claim. . . . We think this case should be relatively simple, and not expanded in the exponential way you are obviously heading.

Ex. 3 to Plaintiffs' Discovery Statement (counsel's email chain) at 7 (August 25, 2023 email).

---

[8] In the Discovery Conference, Plaintiffs' counsel stated that he did not oppose the subpoenas to the Leevans' adjuster and to Ethos Environmental, LLC, whose remediation estimate the Leevans provided to ASIC during the claim-adjustment process. The court therefore overrules any objections Plaintiffs had with respect to the subpoenas to their adjuster and to Ethos.

In its Discovery Statement, ASIC argues that the Leevans lack standing to object to the subpoenas on the basis of relevance or proportionality—which is correct. *See, e.g.*, *Windsor*, 175 F.R.D. at 668; *Electro-Mechanical Prod., Inc. v. Alan Lupton Assoc's Inc.*, No. 22-cv-763-PAB-SBP, 2023 WL 5747495, at *4-5 (D. Colo. July 28, 2023) (holding that a party has standing only to object to subpoena only for privilege, privacy, or confidentiality). The Leevans cite instead *Sun River Energy, Inc. v. Nelson*, No. 11-cv-00198-MSK-MEH, 2011 WL 1527715, at *3 (D. Colo. Apr. 22, 2011), in which Chief United States Magistrate Judge Michael E. Hegarty considered a party's objection to the scope of the information sought in a subpoena pursuant to Rule 26(b) instead of Rule 45. But in that case, the party did not seek to quash the subpoena but only "request[ed] review of the scope of discovery sought." *Id*. Here, the Leevans object to the Subpoenas entirely, i.e., they seek to quash the Subpoenas.[9] As such, under the longstanding precedent of *Windsor*, the Leevans lack standing to object to the Subpoenas on the basis of relevance or proportionality. Accordingly, the court overrules the Leevans' relevance and proportionality objections to the Subpoenas.

However, the Leevans raise a new objection in their Discovery Statement: a privacy interest with respect to "private financial information completely unrelated to the claim." Plaintiffs' Discovery Statement at 8.[10] The Leevans apparently refer to the Subpoenas' requests

---

[9] In addition, Judge Hegarty later expressly held that parties "have standing to move to quash the challenged subpoenas . . . only by challenging the disclosure of privileged or private information . . . [and] any objections by the Plaintiffs as to the relevance of the subpoenaed information are improperly raised in the motions to quash." *Church v. Dana Kepner Co.*, No. 11-cv-02632-CMA-MEH, 2013 WL 24437, at *3 (D. Colo. Jan. 2, 2013). *See also Cobbler Nevada*, 2016 WL 300827, at *1.

[10] The Leevans' Discovery Statement also mentions in passing that they wish to protect "any potential privilege." But merely mentioning a potential privilege without attempting to identify

for Contractor documents concerning the Leevans or the Property, unrelated to the claim at issue (i.e., the Property's damage from the Marshall fire). *See, e.g.*, Plaintiffs' Ex. 5, categories 1-2. The Leevans do not further explain, but the court infers that the Leevans consider any dealings they had with the Contractors, unrelated to the Claim, to be private financial information.

This court has doubts as to whether parties should be permitted to raise new objections to a subpoena in a discovery statement submitted two months after they initially objected on other grounds. At least as to subpoena recipients, Rule 45 requires a "written objection" within "the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). That deadline "does not apply to a non-served party or non-party, provided that any objection to the subpoena is timely filed." *Broadcort Cap. Corp. v. Flagler Sec., Inc.*, 149 F.R.D. 626, 628 (D. Colo. 1993). But the Leevans did not submit their Discovery Statement until two months after their initial objection, which does not strike this court as particularly timely. However, ASIC does not raise the issue of timeliness, and it appears ASIC did not consider whether the Leevans' objection may have violated this provision of Rule 45—since ASIC did not bring the issue to this court, as Rule 45(d)(2)(B)(i) would require. Thus, in this instance only, the court will consider the Leevans' privacy objection timely.

"[W]hen a privacy interest is involved, courts typically weigh one party's right to

_____

that privilege, and how it could conceivably apply to any of Plaintiffs' communications with the Contractors, is too cursory to constitute an actual objection. Plaintiffs do not contend that any of the Contractors are expert witnesses in this case, so it is difficult for this court to imagine how any privilege would possibly apply. Moreover, at least by the time of the Discovery Conference, it appears that Plaintiffs' counsel had copies of the documents. Counsel stated that they were working through 5,000 pages of documents, but he did not suggest that he was unable to search the documents for purposes of a privilege review, including by electronic means.

discovery against the other party's privacy interests." *Vyanet Operating Grp., Inc. v. Maurice*, No. 21-cv-02085-CMA-SKC, 2023 WL 4408256, at *3 (D. Colo. July 7, 2023). Here, the court begins with the Leevans' asserted interest in their private financial information that is unrelated to the Claim. In support of this privacy interest, the Leevans cite *Silva v. Basin Western, Inc*., 47 P.3d 1184, 1188 (Colo. 2004); *Leidholt v. Dist. Ct*., 619 P.2d 768, 770-71 (Colo. 1980); *Stone v. State Farm Mut. Auto. Ins. Co.*, 185 P.3d 150, 155 (Colo. 2008); and *Whalen v. Roe*, 429 U.S. 589, 599 (1977).

*Silva* addresses a request for an insurance company's reserves and settlement authority and finds such information irrelevant in the context of a third-party personal injury case. 47 P.3d at 1193. *Leidholt* discusses a privacy interest in a defendant's "financial worth," "financial affairs," or "financial condition" in the context of a discovery request for information related to a plaintiff's request for punitive damages. 619 P.2d at 771. *Whalen* evaluates an individual's privacy interest in their doctor-patient relationship, in the context of a state-mandated disclosure of that relationship for prescriptions of certain controlled medications. The Supreme Court found that the state did not violate a right of privacy. 429 U.S. at 599-604. Finally, *Stone* addresses an individual's privacy interest in her tax returns:

> This general reluctance of courts to compel the disclosure of tax returns is due to both the private nature of the sensitive information contained therein and the public interest in encouraging the filing by taxpayers of complete and accurate returns. Aside from disclosing income, tax returns typically contain "information about the taxpayer's marital status, dependents, business dealings, investments, religious affiliations, charitable inclinations, property holdings, and debt obligations." Indeed, a tax return reveals "the skeletal outline of [a taxpayer's] personal and financial life."

*Stone*, 185 P.3d at 155-56 (cleaned up) (citations omitted).

Here, the Leevans have not attempted to identify or explain what types of "private financial information" the Contractors had or could have relating to the Leevans or the Property that is unrelated to the Claim. They do not argue that any of the Contractors have documentation showing the Leevans' financial status or worth, their income, taxes, property holdings, or financial assets. It appears instead that the Leevans are arguing that their payments to the Contractors—or, perhaps more broadly, their dealings with the Contractors—constitute private information that should not be produced except as related to the Claim. *Stone* does recognize a privacy interest in an individual's personal life, at least when the documents in question would reveal "the skeletal outline of a [person's] personal or financial life." *Id*. at 156. But the Leevans have not argued that their payments or dealings with the Contractors, unrelated to the Claim, would divulge their personal or financial lives to that extent. The court finds that their privacy interest is relatively weak and would be adequately protected by designating sensitive documents as "confidential" under the protective order in this case. *See* ECF No. 29.

Next, the court must address ASIC's relative need for the information it requested in the Subpoenas.[11] The Leevans argue that the subpoenaed documents are irrelevant for essentially the same reasons that they argued in opposing the Motion to Compel Inspection: waiver, estoppel, and laches. Those arguments are no more persuasive as to the Subpoenas than they were as to the inspection. Because the Leevans bring a breach of contract claim, ASIC has shown significant need for the Subpoenas. Hrg. Trans. at 58-61. The Contractors' documents may show existing

---

[11] Thus, in the end, the court must address the Leevans' arguments on the relevance and proportionality of the Subpoenas, despite their not having standing to directly object to the Subpoenas on that basis. *See, e.g.*, *Vyanet*, 2023 WL 4408256, at *2-3.

relationships with the Leevans or may contain statements and other information that are relevant to the weight a jury should give to the Contractors' assessments of the Claim.

Moreover, the Leevans' supplemental brief (ECF No. 39), and the accompanying excerpts of Mr. Bashor's deposition testimony, do not change the court's conclusions in any regard. Even if Mr. Bashor's testimony is as favorable to the Leevans as they argue—a point which ASIC vigorously disputes, *see* ECF No. 48—that would not preclude ASIC from pursuing its defenses or discovery related to those defenses. It is self-evident that discovery disputes are not dispositive motions and therefore are not appropriate vehicles for arguments attacking the relative strength or weakness of claims and defenses. *See, e.g.*, *Electro-Mech. Prod.*, 2023 WL 5747495, at *7 (in ruling on discovery motions, declining to decide a "merits question" which was for the district judge or jury to decide). "This court is not willing to allow one party to determine unilaterally what is relevant, insofar as discovery is concerned, for the opposing party." *Id.* (quoting *Gulf Coast Shippers Ltd. P'ship v. DHL Express (USA), Inc.*, No. 2:09CV221, 2015 WL 127857, at *2 (D. Utah Jan. 7, 2015)).

In addition, in their supplemental brief, the Leevans argue that any claims ASIC may wish to raise concerning the Leevans' alleged motivation to inflate their claim are

> barred by the doctrines of equitable estoppel and laches, as described by Judge Krieger in *Copper Oaks v. American Family*, 15-cv-01828-MSK-MJW, 2018 WL 3536324, at *17–18 (D. Colo. July 23, 2018). *See also Plaza* [*Ins. Co.*] *v Lester*, 14-CV-01162-LTB-CBS, 2015 WL 3528336, at *9 (D. Colo. June 4, 2015) (describing an insurer's liability for fraudulent concealment of material facts which "in equity and good conscience" should be disclosed).

ECF No. 39 at 2-3. But *Copper Oaks* holds to the contrary: that the insurer in that case had *not* waived its argument (concerning an appraisal), was *not* equitably estopped, and laches did *not*

apply. 2018 WL 3536324, at *17–18. As for the portion of *Plaza Insurance* to which the Leevans cite, the court therein discusses the elements of common law fraudulent concealment or nondisclosure only insofar as those elements intertwined with the insured's "invocation of the fraud exception" to the attorney-client privilege. 2015 WL 3528336, at *9. After reviewing the publicly available record in detail, the court found

> sufficient evidence to support a good faith belief by a reasonable person that Plaza fraudulently misrepresented or concealed material information from Defendants in an effort to bar, or substantially constrain, any recovery of UIM benefits by Ms. Lester and/or the Bradens, and that Plaza's communications with NARS and the Treece Firm were related to and in furtherance of that fraudulent conduct.

*Id.* at *16. The court thus found the fraud exception to the attorney-client privilege applied to several documents and compelled Plaza to produce them. *Id*. But it did not describe an insurer's liability for fraud.[12] In any case, *Plaza Insurance* has no apparent bearing on the question for which the Leevans cited it, which is whether ASIC should be permitted the discovery it sought in the Discovery Conference.

In short, ASIC has shown it needs the subpoenaed documents, and any privacy interest the Leevans may have in those documents can be adequately protected by designating them as "confidential" under the Protective Order. Accordingly, the Leevans have not met their burden to show that the court should quash or modify the Subpoenas, and their objections are overruled. If ASIC has not already done so, it shall promptly produce complete copies of the subpoenaed documents to the Leevans.

---

[12] To the extent counsel for the Leevans intended these citations only for the *elements* of waiver, estoppel, laches, and fraudulent concealment, that is not how he presented his argument. The court respectfully cautions the Leevans' counsel to ensure that he does not misrepresent the law to this court again going forward.

**B.      The Leevans' Discovery Responses**

      *1.      Contingency Fee Arrangements or Other Third-Party Interests in the Claim or this Litigation*

**Interrogatory No. 1** asks Plaintiffs to identify every person or entity that has, or has ever had, an interest in any recovery from this action and the nature of such interest. **Interrogatory No. 7** asks Plaintiffs to identify all written or oral agreements they have entered into with any person or entity with respect to the Claim or this lawsuit.[13] In refusing to substantively respond to these requests, Plaintiffs argue that the requests are irrelevant and invade their right to privacy and/or are privileged. ASIC notes that requiring the Leevans to state whether they have a contingency fee arrangement with their counsel and, if so, the percentage or amount, would suffice; if it obtains that information, ASIC would not need a copy of the Leevans' fee agreement with counsel.

      In their Discovery Statement, Plaintiffs assert that ASIC's counsel is requesting this information as grounds for later asserting that Plaintiffs' counsel (or Plaintiffs themselves) have engaged in a fraudulent or "set up" case, i.e., that they have deliberately asserted inflated values during the claim-adjustment process to "set up" ASIC for Plaintiffs' bad faith claims. Plaintiffs contend that this is a "fishing expedition" to "belatedly claim 'fraud' and then attempt to rescind all coverages under the policy." Discovery Statement at 14 n.2. The Leevans also assert more broadly that "there is authority in Colorado that any 'motives' of the plaintiff[']s] attorney are entirely irrelevant, and therefore this entire suggestion and discovery is irrelevant." *Id.* at 15. But the only case that the Leevans cited was *Miller v. Byrne*, 916 P.2d 566, 576 (Colo. App. 1995),

---

[13] ASIC attached the subject discovery requests and the Leevans' responses to its Discovery Statement.

*as modified on denial of reh'g* (Oct. 5, 1995). In that case, the Colorado Court of Appeals held that "the *motivation* or *intent* of [a lawyer] to 'set up' [the insurance company or its attorneys] for a bad faith claim does not, **on this record**, appear to meet the tests of legal materiality or logical relevance." *Id.* (italicized emphasis in original; bolded emphasis added). But "*Miller* does not foreclose the idea that an insurer could put forth a financial motivation as their theory of the case regarding why an insured failed to cooperate." *Cribari v. Allstate Fire & Cas. Ins. Co.*, 861 F. App'x 693, 709 (10th Cir. 2021).

In the Discovery Conference and the Leevans' supplemental brief that followed,[14] the Leevans focus almost entirely on their fee agreement with counsel. The Leevans argue that under the cases ASIC discussed , that agreement would only be relevant if

> (1) an actual defense was pled relating to alleged claim inflation; and (2) a factual "nexus" linking the attorney to obtaining and submitting the challenged estimates to the insurer. Here, there is no such defense, and perhaps more importantly, no conceivable factual nexus, as the undersigned's initial letter of representation to Defendant was sent more than 6 weeks after Plaintiffs (who were without counsel for a significant period of time) made their last submission of any repair estimates.

Oct. 27, 2023 Supplemental Brief at 2 (footnotes omitted). Thus, because ASIC does not plead a defense of "claim inflation" in its answer, and the Leevans did not retain counsel until several weeks *after* they submitted their last estimate to ASIC, the Leevans argue their fee agreement with counsel is irrelevant.

---

[14] The court permitted the Leevans to file a supplemental brief of no more than five pages to respond to the cases that ASIC's counsel discussed in connection with this issue in the Discovery Conference. The Leevans then submitted a six-page brief with seventeen exhibits. This not only exceeds what the court permitted but is the sort of overkill that contributes to lengthy delays in resolving disputes. The court respectfully adjures the Leevans' counsel to comply with the court's page limits and refrain from attaching numerous exhibits going forward.

The court has already noted above that ASIC states defenses to which its theory of claim inflation pertains. *See, e.g.*, ECF No. 12 at 19 (third affirmative defense). As such, the court is not persuaded that ASIC had to plead the term "claim inflation" in order for this discovery to be relevant.

However, ASIC does not address the fact that counsel did not represent the Leevans during the claim-adjustment period. It does, on the other hand, note that Interrogatories 1 and 7 ask for the identity of *anyone* who has or had an interest in the Claim or this litigation, not just counsel. In the Discovery Conference, ASIC discussed cases in which insurers have discovered that the insured's estimator or adjuster had a financial stake in the litigation or a personal relationship with the insured's counsel. ASIC's counsel also pointed to several cases finding that financial motive is relevant in an insurance case, or recognizing the issue of potential fraud by appraisers or public adjusters. ECF No. 38 (Hrg. Trans.) at 52-59. Among the cases ASIC discussed was *Cribari*, in which the Tenth Circuit found no error in allowing the insurer to present evidence of the insured's financial motive to not cooperate—or in the insurer's phrasing, to "set up" bad faith claims. 861 F. App'x at 709.[15] As the Leevans note, ASIC does not raise a failure-to-cooperate defense in this case, but *Cribari* does not limit the relevance of financial motive to that defense.

---

[15] In the Leevans' supplemental brief of October 27, 2023, they mischaracterize ASIC's argument in the Discovery Conference concerning *Cribari*. *Id.* at 2. The court has reviewed the hearing transcript, which was not available when the Leevans submitted the brief in question, along with each case that ASIC's counsel discussed. ASIC's counsel did not misrepresent the law to the court, as the Leevans contend. Rather, counsel was clear that the cases on which he relied concerned the relevance of financial motive in insurance cases, not necessarily that the cases found counsel's fee agreement to be relevant.

The court concludes from the Leevans' failure to provide any authority or to object to identifying any persons (other than counsel) who had or have an interest in the Claim or this litigation, that they have waived or withdrawn all objections to Interrogatories 1 and 7 except as to their counsel. The court further finds that this information, as to persons other than counsel, is relevant and proportional to the needs of the case. Accordingly, the Leevans shall respond to Interrogatories 1 and 7, as to persons other than their counsel, within 14 days of the date of this Order.

As to the Leevans' counsel, ASIC has narrowed its requests to encompass only the type or basis of the fee arrangement (contingency, hourly, flat, or hybrid) and the rate or percentage of the fee.[16] While the court is not persuaded by the Leevans' argument that this information would only be relevant had ASIC asserted a failure-to-cooperate defense—obviously, fees could be relevant to ASIC's defense that the more extensive work that the Leevans requested during the claim-adjustment process was unnecessary (e.g., its third affirmative defense)—the court declines at this time to order the Leevans to disclose information concerning the type or rate of their fee arrangement with counsel.

First, the court has located no precedent clearly suggesting that production of this

---

[16] The Leevans do not claim attorney-client privilege or work-product protection over this information, nor is the information entitled to those protections. *See, e.g.*, *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1488 (19th Cir. 1990) ("the identity of an attorney's client and the source of payment for legal fees are not normally protected by the attorney-client privilege"); *Roe v. Catholic Health Initiatives Colo.*, 281 F.R.D. 632, 636 (D. Colo. 2012) (recognizing that, "[g]enerally, information on an attorney's billing statement which shows the fee amount, the general nature of the services performed, and the case on which the services were performed is not privileged," and that "disclosing actual fee contracts has the potential for revealing confidential information along with unprotected fee information.").

information is appropriate under the unique circumstances here, where counsel did not represent the Leevans during the claim-adjustment period. ASIC points to only two publicly-available opinions (and this court has located no others) in which a court in this District or a Colorado state court has approved the use of a fee agreement as evidence in a case, and neither mirrors the situation before the court now.

In *State Farm Mut. Auto. Ins. Co. v. Goddard*, 484 P.3d 765 (Colo. App. 2021), the assignee of the insured claimed that the insurer had unreasonably refused her offer to settle for policy limits. *Id.* at 769-70. State Farm argued that the plaintiff and her counsel had sabotaged the underlying settlement efforts because they had a financial incentive to do so. As evidence of that incentive, State Farm presented the plaintiff's fee agreement with counsel, which provided a higher percentage contingency fee if counsel took the underlying case to trial. 484 P.3d at 778-79. The agreement was thus relevant to causation on the plaintiff's bad faith claim. *Id.*[17]

*King v. Allstate Ins. Co.*, No. 11-cv-00103-WJM-BNB, 2013 WL 4461593, at *1-2 (D. Colo. Aug. 20, 2013), involves circumstances similar to *Goddard*: the insured (Lauk) had a car accident with a third party; ultimately, she was subjected to a judgment far in excess of her policy limit after her insurer (Allstate) did not accept the third party's policy limit demand. Lauk declared bankruptcy, her bad faith claim against the insurer was assigned by her bankruptcy estate, and the bankruptcy trustee brought the bad faith claim against Allstate. *Id*. Allstate obtained through discovery the trustee's fee agreement with his counsel, and on a motion in

---

[17] *Goddard* also found counsel's fee agreement relevant to the insurer's affirmative defense of collusion (between the insured and the plaintiff), but ASIC does not raise such a defense here, and the jury does not appear to have reached that defense in *Goddard*.

limine, the court found the agreement relevant because one of the plaintiff's trial witnesses (counsel who had represented the underlying third-party claimants against Lauk) believed that he "may recover some money for costs and/or fees if the Plaintiff prevails in this case." *Id.* at *4.

In both *Goddard* and *King*, counsel's fee agreement was discussed as relevant only with respect to matters that occurred before the litigation, and apparently *during the claim-adjustment period*. ASIC also cited an unpublished order in which Judge Crews ordered disclosure of counsel's fee and the basis for it: *Sunset Stone, Inc., v. Union Ins. Co.*, No. 18-cv-00541-WJM-SKC, ECF No. 61 (D. Colo.) (minute entry of discovery conference held August 9, 2019). *See* ECF No. 38 (Hrg. Trans.) at 79.[18] In *Sunset Stone,* Judge Crews held an informal discovery conference and found that while counsel's *retainer agreement* was not relevant or proportional to the insurer's then-defenses, counsel's fee and the basis for it were relevant and proportional as questions to ask in deposition. *See* Case No. 18-cv-00541, ECF No. 62 (Hrg. Trans.) at 17, 41. Judge Crews appears to have left open the question of whether counsel's retainer agreement would also become discoverable. *Id.* at 40. However, much as in *Goddard* and *King*, the insured in *Sunset Stone* appears to have retained counsel at the same time it submitted allegedly "overly

---

[18] Additionally, in the Discovery Conference ASIC cited *Palm v. Encompass Insurance* (no citation given, but referring to a hearing with Judge Varholak). The *Palm* case appears to be *Palm v. Esurance Property & Casualty Insurance Co*., No. 20-cv-02838-NYW-STV, ECF No. 27 (D. Colo.) (minute entry of discovery conference held January 4, 2022). Judge Varholak ordered the plaintiff to submit counsel's fee agreement for *in camera* review of whether any portion was attorney-client privileged. *Id*. This implies that Judge Varholak found counsel's fee agreement was relevant and proportional, else he would not have offered to review it *in camera*. But there is no reasoning provided, and although the minute entry states that the transcript was the official record of the court's orders that day, no transcript appears to have been requested or filed.

inflated estimates." *Id*. at 17.

ASIC has not cited, nor has this court found, a case finding that an insured's *post-claim adjustment* fee agreement with counsel is relevant—other than on motions for attorney fees. The Leevans' counsel may have an incentive to maximize the amount that his clients obtain in this case, or may even have a financial incentive not to settle the case before trial, as was the case in *Goddard*. But on the current record, it does *not* appear that the Leevans are arguing that ASIC has unreasonably continued or lengthened this litigation in breach of its common law duty of good faith. *See, e.g.*, *Byron-Amen*, 2022 WL 1567563 at *6 ("an insurer's post-litigation conduct may be relevant to an insured's common law bad faith claim"). If the Leevans do seek to make such a claim in the future, then their counsel's own possible incentive to continue or lengthen this litigation would become relevant for ASIC's defense. At this point, therefore, the court sees no meaningful difference between this case and any other case in which a plaintiff's lawyer may (or likely does) have a contingency fee agreement. And discovery of plaintiff counsel's fee agreement does not appear to be the norm, unless and until there is a fee agreement dispute or a motion for attorney fees.[19]

On the current record, then, the Leevans have met their burden to show that the information ASIC seeks regarding the Leevans' fee arrangement with their counsel is *not* evidence that has "any tendency to make a fact more or less probable than it would be without

---

[19] Other than *King* and *Goddard*, the court found only one reported case in which a counsel's fee agreement was compelled in discovery outside the context of fee agreement disputes or motions for attorney fees. *See Srebnik v. Dean*, No. 05-cv-01086-WYD-MJW, 2007 WL 988064, at *1 (D. Colo. Mar. 28, 2007). But the order does not explain why the court found the fee agreement relevant, and the case does not involve an insurance dispute.

the evidence," and further, that the information sought is *not* "of consequence in determining the action." *See* Fed. R. Evid. 401. Lacking relevance, the information is not required to be produced at this time. But if the Leevans were at some point to assert that ASIC's conduct in this litigation is itself actionable as common law bad faith, *see Byron-Amen*, 2022 WL 1567563, at *6, ASIC may file a motion to compel the production of the Leevans' fee agreement with counsel.

      2.      *The Leevans' Payments to Contractors Relating to the Claim, and the Leevans' Use of the Funds that ASIC Paid to the Leevans*

**Interrogatory No. 12** asks Plaintiffs to identify any and all payments they made or received in connection with the Claim or subject damage, including payments made to or received from vendors, contractors or subcontractors. Plaintiffs' response to Interrogatory No. 12 states that "the only payments *received* by Plaintiffs were the limited payments issued by Defendants to Plaintiffs." Plaintiffs ignore the request for information regarding the payments *they* have made.

**Interrogatory No. 13** requests that Plaintiffs describe how they have used the insurance proceeds received from ASIC in connection with the Claim. Plaintiffs' response to Interrogatory No. 13 merely states that "the ALE [Additional Living Expenses] payments were used for our housing through the time ASIC cut off our payments at the end of 2023." However, Plaintiffs fail to provide any information regarding their use of proceeds other than ALE (e.g., dwelling and personal property).

**Request for Production No. 15** requests the production of all documents constituting, comprising, summarizing, referring to, evidencing, or mentioning any of the expenditures, deposits, or investments of the insurance proceeds received with respect to the Claim to date, including, but not limited to, documents evidencing the goods and services received in exchange

for the proceeds. Plaintiffs refused to respond to this request, stating that they "will not produce their personal, private financial information related to the funds."

The Leevans' objections to Interrogatories 12 and 13, and RFP 15 are overruled for the same reasons as their objections to the Subpoenas. These requests seek relevant information concerning transactions that relate to the Claim, repair of the damage that is the subject of the Claim, or this litigation. The Leevans contend that the Property is still not habitable, and they seek damages for the additional living expenses they have incurred since ASIC stopped paying for those expenses. Thus, ASIC's requests for information concerning how the Leevans have used the proceeds that ASIC paid to them, and their transactions relating to the Property generally, are relevant, at a minimum, to whether the Leevans have mitigated their damages. The Leevans have not shown that their privacy interest in such information would not be adequately protected under the protective order in this case.

The objections to Interrogatories 12 and 13, and RFP 15, are overruled. The Leevans shall promptly and fully respond to these requests within 14 days of the date of this Order.

## CONCLUSION

Accordingly, having considered all relevant information and the applicable law, this court respectfully **ORDERS**[20] as follows:

---

[20] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require

1. Defendant ASIC's Motion to Compel (ECF No. 49) is **GRANTED**. Within 14 days of the date of this Order, the parties shall confer and agree upon a date certain for the inspection of the entire Property, which shall be conducted in accordance with this Order and the notice Defendant has provided to Plaintiffs.

2. Plaintiffs' Motion for Leave to Supplement (ECF No. 58) is **GRANTED.**

3. Plaintiffs' objections to the Subpoenas and to ASIC's Interrogatories 1, 7, 12, and 13, and RFP 15, are **OVERRULED**. Within 14 days of the date of this Order, Plaintiffs shall promptly and fully respond to these discovery requests.

4. At this time, Plaintiffs are not required to provide information about their fee arrangement with counsel, but ASIC may file a motion to compel that information if, at some point in this litigation, Plaintiffs contend that any of ASIC's conduct in this litigation itself constitutes bad faith.

DATED: July 16, 2024                        BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").